**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

FILED

AUG 2 3 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

**UNITED STATES OF AMERICA,**

**v.**                                                    **CRIMINAL ACTION NO. 4:13cr49**

**PRINCE JHAMIER BELL,**

       **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court are Prince Jhamier Bell's ("Defendant") Motions to Suppress his arrest and show-up identification (ECF No. 22 and 23). On July 3, 2013, the Court conducted a hearing on the Motions. Based on the record and evidence presented and for the reasons stated herein, Defendant's Motions are **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2013, officers responded to an emergency call from a Shell gas station in the 4900 block of Jefferson Avenue in Newport News, Virginia. The responding officers met with the store clerk (the "Clerk") who stated that at or around 12:55pm, a black man entered the store, ordered everyone to the ground, and pulled out a weapon. The man was dressed in all black, wearing a hat and scarf on his face. After obtaining the money from the cash register, the suspect left the store. The Clerk then called 911 and identified the perpetrator as a "tall black male wearing all black with a scarf on his face." However, the 911 dispatcher inadvertently stated that the suspect had a "scar" on his face. The Clerk relayed his description of the suspect to responding officers and noted that he observed the suspect heading toward 48th Street after the robbery. Officers responding to the scene issued a "be on the lookout" (BOLO) which stated, in part, that they were attempting to apprehend a black male who "had on a black hoodie, scarf

tied up around his face, brandished black Glock, last seen heading toward 600 block of 48th Street."

At approximately 1:11pm, officers observed Defendant dressed in dark clothing, running through the neighborhood near 46th Street. Upon seeing the officers, Defendant continued to flee. He was later apprehended on 42nd Street wearing a white t-shirt and black pants. Using a K-9 police dog, officers recovered a black hooded sweatshirt and a large amount of money behind homes on 42nd and 43rd Street. Defendant denied participating in the robbery, but admitted to running from the police.

At approximately 1:37pm, officers then transported Defendant to the 600 block of 42nd Street and conducted a "show-up" identification. After Defendant exited the vehicle and turned around, the Clerk identified him, stating, "Yeah that's him, I can tell by the pants and shoes." Defendant was subsequently indicted and charged with Interference with Commerce by Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 and Brandishing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and (2). Defendant now moves to suppress all evidence related to his arrest and witness identification, arguing that his Constitutional rights were violated.

## II. LEGAL STANDARD

### A.    Probable Cause

The Fourth Amendment protects criminal defendants against "unreasonable searches and seizures." U.S. CONST. AMEND. IV. It requires that an arrest or search be based upon probable cause and executed pursuant to a valid warrant. *See Katz v. United States*, 389 U.S. 347 (1967). A police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is

2

about to commit a crime. *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) (citing *Maryland v. Pringle*, 540 U.S. 366 (2003)). To determine whether probable cause exists, the Court must look to the totality of the circumstances surrounding the arrest. *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983); *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). The quantum of evidence necessary to establish probable cause "is more than a mere suspicion, rumor, or strong reason to suspect but less than evidence sufficient to convict." *United States v. Beckham*, 325 F.Supp.2d 678, 686 (E.D. Va. 2004) (quoting *United States v. Williams*, 10 F.3d 1070, 1073 (4th Cir. 1993). Probable cause "is a practical, nontechnical concept based on probabilities and common sense." *Beckham*, 325 F.Supp.2d at 686.

**B.    Witness Identification**

The United States Supreme Court has outlined a two-step approach to determine the admissibility of identification testimony. First, the defendant must prove that the identification procedure was impermissibly suggestive. *Holdren v. Legursky*, 16 F.3d 57, 61 (4th Cir. 1994) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). Even if the defendant proves that the identification procedure was suggestive, an identification is still valid if reliable. *Brathwaite*, 432 U.S. at 114; *Neil v. Biggers*, 409 U.S. 188, 199 (1972). The reliability of an eyewitness identification is also assessed under the totality of the circumstances, gauged by the five factors identified by the Supreme Court in *Biggers*. The *Biggers* factors include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Brathwaite*, 432 U.S. at 11.

## III. DISCUSSION

**A.     Motion to Suppress—Lack of Probable Cause**

Defendant seeks to suppress the arrest and all subsequent evidence following the arrest

based on violation of his Fourth, Fifth, and Fourteenth Amendment rights.  Specifically, he

claims that the police lacked probable cause to arrest him.  Defendant argues that the arresting

officers lacked probable cause because Defendant did not have the scar on his face that the 911

dispatcher included in the description of the robbery suspect.  Defendant further claims that he

was not wearing the clothes described in the BOLO and essentially only fit the "tall black male"

part of the description.  The Government contends that the officers had probable cause for arrest

based on the collective knowledge of the police at the time of Defendant's detention, the Clerk's

description, and Defendant's suspicious activity.

Probable cause is based upon a practical analysis of the totality of the circumstances.

*United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990); *Illinois v. Gates,* 462 U.S. 213,

230–31 (1983).  In assessing the totality of the circumstances, it is appropriate to consider

various factors including, *inter alia,* (i) "an officer's practical experience and the inferences the

officer may draw from that experience," (ii) a suspect's "[h]eadlong flight" upon noticing the

presence of a police officer, (iii) a suspect's evasive conduct short of headlong flight, or (iv) even

"seemingly innocent activity" when placed in the context of surrounding

circumstances.  *Beckham*, 325 F.Supp.2d at 686.

In the instant case, several factors weigh in favor of probable cause for Defendant's

arrest.  The Clerk provided responding officers with a description of the robbery suspect: a tall

black male, wearing all black, with a scarf on his face.  That description was then relayed to

other officers in the area.  At least two officers observed Defendant running through the yards of

homes in the neighborhood, in the same direction the Clerk reported seeing the suspect flee.  At

4

the hearing, Officer Effinger testified that at one point during the pursuit, he observed Defendant walking along 42nd Street. Defendant made eye contact with Officer Effinger and proceeded to run away.

During flight, Defendant was observed wearing clothes fitting the Clerk's description. However, at or around the time he was detained, officers noted that Defendant was wearing a white shirt and black pants. Officers later recovered a black hooded sweatshirt and a large amount of money behind homes along Defendant's path of flight. When officers apprehended Defendant on 42nd Street, he appeared to be breathing heavily, sweating, and possibly bleeding.

The Court further notes that the relatively short time between the time the robbery occurred and Defendant's apprehension supports a finding of probable cause. The Clerk placed the emergency call at 12:57pm and Defendant was initially apprehended at or around 1:11 pm. Taken together, Defendant's attire, demeanor, and flight through the neighborhood serve as a "confluence of factors independently susceptible of innocent explanation . . . [that] may provide the requisite basis for a finding of probable cause." *United States v. Garcia*, 848 F.2d 58, 60 (4th Cir. 1988) (citing *Gates,* 462 U.S. at 244, n. 13).

### B.     Motion to Suppress Witness Identification

As a preliminary matter, Defendant argues that the Court need not look to the "suggestiveness and prejudice" of the show-up identification because Defendant was denied his Sixth Amendment Right to Counsel. Defendant's argument is misplaced because the right to counsel does not attach immediately after arrest and prior to arraignment, but only after the commencement of adversary judicial proceedings. *United States v. Alvarado*, 440 F.3d 200 (4th Cir. 2006) (citing *United States v. Gouveia,* 467 U.S. 180, 190 (1984) ("[W]e have never held that the right to counsel attaches at the time of arrest."); *Kirby v. Illinois*, 406 U.S. 682 (1972)

(plurality opinion) (concluding that a police station show-up conducted after defendant's arrest, but before the initiation of any adversary criminal proceeding is not a criminal prosecution at which the accused, as a matter of absolute right, is entitled to counsel).

However, there may be occasions during the course of a criminal investigation when the police do abuse identification procedures and "such abuses are not beyond the reach of the Constitution." *Kirby*, 406 U.S. at 682. The Due Process Clause of the Fourteenth Amendment protects individuals from unreliable identifications that result from impermissibly suggestive procedures. *See Brathwaite*, 432 U.S. at 113. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has deemed procedures "unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *United States v. Greene*, 704 F.3d 298, 305-306 (4th Cir. 2013) (citation omitted). Defendant argues that the show-up identification was overly suggestive and produced such prejudicial results that it should be excluded.

The practice of presenting individual suspects to witnesses for the purpose of identification, and not as part of a lineup, raises special concerns. The Fourth Circuit made particular note of the special concerns associated with eye witness identifications:

> Positive identification testimony is the most dangerous evidence known to the law. That is true because it is easier to deceive ourselves than others: pressured to help solve a heinous crime, often conscious of a duty to do so, and eager to be of assistance, a potential witness may be readily receptive to subtle, even circumstantial, insinuation that the person viewed is the culprit. Unless such a witness is far more introspective than most, and something of a natural-born psychologist, he is usually totally unaware of all of the influences that result in his say, "That is the man."

*Greene*, 704 F.3d at 305-306. Nonetheless, an identification infected by improper police influence is "not automatically excluded… if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification

6

evidence ordinarily will be admitted, and the jury will ultimately determine its worth." *Perry v. New Hampshire,* 132 S.Ct. 716, 720 (2012); *Brathwaite,* 432 U.S. at 112, (noting that automatic exclusion is a "Draconian sanction"). Thus, while arrest scene show-ups may under some circumstances be suggestive, *see, e.g., Smith v. Coiner,* 473 F.2d 877, 881 (4th Cir.1973), prompt show-ups are not *per se* suggestive. *United States v. Wilson,* 210 F. App'x. 263, 265-266 (4th Cir. 2006) (upholding validity of witness identification where store clerk/witness to robbery's description included the defendant's "race, height, approximate weight, complexion, and clothing" and vehicle). Show-up identifications may not be unduly suggestive when they happen immediately following a crime, because they may be "sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them" *Simmons v. United States,* 390 U.S. 377, 384 (1968).

In assessing the admissibility of an identification, a court must first consider whether the identification procedure is unnecessarily suggestive. *Greene,* 704 F.3d at 305. Second, if the procedure was unnecessarily suggestive, the court must look to the factors set forth in *Biggers,* to determine if the identification testimony is nevertheless reliable under the totality of the circumstances. *Id.* Factors to be considered in evaluating the reliability of the witness' identification include: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Biggers,* 409 U.S. at 199-200; *Greene,* 704 F.3d at 305-306.

Defendant argues that the show-up identification was impermissibly suggestive because the Clerk identified him while Defendant was handcuffed and in police custody after overhearing

7

on police radios that the suspect was in custody. Defendant further argues that the Clerk was sitting in a police vehicle roughly 50 feet away and could only recognize his shoes and pants when he made the identification. The Court FINDS that such circumstances may be unduly suggestive, however in this matter, the witness' identification is sufficiently reliable pursuant to the *Biggers* factors. *See Brathwaite*, 432 U.S. at 116 ("reliability is the linchpin of [the *Biggers* test]").

The Government notes that the identification took place forty-two minutes after the Clerk placed the initial 911 call. During the hearing, the Clerk testified that he was close to Defendant during the robbery. He testified that he was able to identify the suspect from the waist down because during the robbery, the suspect kept the gun at waist-level, pointed at the Clerk. The Clerk even made note that the gun was a Glock. On examination, the Clerk further elaborated, noting the specific style of the suspect's pants and that his shoes were black high-tops with smooth soles and mud at the bottom. The Court observed the Clerk's demeanor and made special note of the degree of confidence and consistency with which he relayed the identifying information. *See Biggers*, 409 U.S. at 200 (finding show-up identification reliable where the victim saw her assailant for a considerable period of time under adequate light, provided police with a detailed description of her attacker long before the show-up, and had "no doubt" that the defendant was the person she had seen). Accordingly, the Court FINDS that the Clerk's identification is sufficiently reliable and will not suppress the show-up identification.

### IV. CONCLUSION

For the reasons outlined above, Defendant's Motions to Suppress are **DENIED**.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 23, 2013

Raymond A. Jackson
**United States District Judge**

8